MAURER *v*. SCHOOL DISTRICT NO. 1.

1. CONTRACTS—WAIVER OF TERMS—BREACH — BUILDING CONTRACTS —CONSTRUCTION.

A construction contract provided that plaintiffs should complete their work on or before a stated date, and that the payments should be made upon the certificates of the architect acting in defendant's behalf. There was a further provision for liquidated damages of $10 per day in case of failure to complete the building in time. Plaintiffs obtained payments upon the contract, from time to time, as the work progressed without presenting the certificates of the architect to defendant. The building was completed after 6 months' delay, which plaintiffs claimed was due to the act of the defendant and its architect in calling for extra work without due notice under the provisions of the contract. *Held*, that since the architect had no authority under the agreement to refuse a certificate for the reason given by him, *i. e.*, that

there was a dispute as to the amount of liquidated damages due under it which had not been adjusted, defendant had waived the provisions of the contract in relation to the requirement of a certificate from the architect and plaintiffs were entitled to a judgment."

2. SAME—DELAY—BREACH OF CONTRACT—RECOUPMENT.

Where the defendant school district caused a delay in the construction of the school building, in that the defendant had to drain an excavation upon the lot to be used, and its architect made serious errors in the plans, necessitating a reconstruction of a part of the building, and where the defendant delayed to notify plaintiffs of its election to have the defendant construct the second story of the building as agreed upon in the written contract, all of which tended to cause delay in completing the structure, it was not a defense of plaintiffs' action for the contract price, and defendant must be held to have abandoned the time limit provided for; the trial court should have directed a verdict in plaintiffs' favor upon the question of liquidated damages.

3. SAME—ARBITRATION—CONSTRUCTION OF CONTRACT—DAMAGES.

A clause in the contract providing for arbitration of damages in case of defendant's delay in providing materials, did not apply where no materials were furnished by defendant, and the only question in dispute was one of liquidated damages for alleged delay in construction.

4. SAME—CONDITIONS PRECEDENT—AFFIDAVIT.

Failure to comply with the statute provision calling for an affidavit of the contractor to show the sums due to materialmen in case a bond was not given, it appearing that such bond was provided and there were no unpaid claims for materials, did not defeat the right of plaintiffs to recover the balance due as the contract price.

5. PLEADING—DECLARATION—BUILDING CONTRACTS—WAIVER.

Although plaintiffs' declaration setting forth a written contract of construction, attached to the common counts in assumpsit, did not state the claim that defendant had waived the clause or provision for completion within a fixed time limit, it sufficiently authorized the recovery of plaintiffs for the balance due for constructing the building.

Error to Oakland; Smith, J. Submitted April 6, 1915. (Docket No. 5.)    Decided June 7, 1915.

Assumpsit by Charles A. Maurer and O. G. Shoup against school district No. 1 of the township of Bloomfield in the county of Oakland. Judgment for defendant upon a directed verdict. Plaintiffs bring error. Reversed.

*Willis Baldwin,* for appellants.

*Pelton & McGee,* for appellee.

MCALVAY, J.    Plaintiffs brought suit in assumpsit against defendant school district to recover a balance of $1,205.30 claimed to be due upon a contract between the parties for work done and materials furnished by them in the erection of a high school building in the village of Birmingham. Upon the trial, at the close of the proofs in the case, on motion of defendant, over the objection of plaintiffs, the court directed a verdict in its behalf upon which a judgment was duly entered.

The following are the facts in the case: Plaintiffs, under a written contract with defendant executed on the 22d day of November, 1911, agreed to furnish all the materials and perform all the work, according to plans and specifications, pertaining to the erection and completion of said school building, "excepting second story maple floors, plastering, wood finish, and the painters' finish of second story" of said building, for the sum of $19,931, the contract providing that defendant had the option and right to furnish the labor and materials in finishing the excepted portions of the second story above mentioned, and to notify plaintiffs at a certain time whether it would exercise such option, and, in case it did not, to pay the plaintiffs the additional sum of $2,825. The contract pro-

186 Mich.—15.

vided that plaintiffs should complete their work under said contract on or before August 1, 1912, and in default thereof they should pay defendant $10 per day thereafter as liquidated damages. Defendant, on July 24, 1912, notified plaintiffs that they accepted the option for them to complete the second story.

According to agreement plaintiffs gave two bonds, one the usual indemnity bond to the State of Michigan, and the other to the owners for failure to execute and perform the contract, which bonds were accepted by defendant as satisfactory. The contract was an ordinary builder's contract. It is of considerable length, requiring six printed pages of the record. It is not necessary to state all of it in this opinion, but such portions will be referred to as may be necessary in discussing the questions involved.

From the defendant's plea it appears to be admitted that the building was completed and ready for occupancy February 7, 1913. It is undisputed that there were no liens on the building for labor or material furnished.

At the close of plaintiffs' case defendant moved for a directed verdict in its behalf, for the following reasons:

"We ask the court to direct a verdict for the defendant in this case on the ground that the plaintiffs have not furnished a sworn statement and have not executed or delivered to the defendants a statement under oath of the names of subcontractors or contractors of persons furnishing material or labor, together with the amount which is due or to become due to them by reason of section 10713, 3 Comp. Laws, and for the further reason that they have not filed any statement as called for by the provisions of the contract.

"And, further, for the reason that the plaintiffs have not secured from the architect a written certificate as required by the contract, and for the further reason that they have not submitted or tried to sub-

mit the question in dispute between the parties to this contract to arbitration, as provided in the contract."

The court denied the motion at that time for the reason that defendant refused to rest its case. Later, at the close of taking proofs in the case, defendant renewed this motion. It was then granted by the court and a verdict was directed against the plaintiffs and in favor of the defendant. Upon this verdict a judgment was entered.

The case is before this court for review upon errors assigned by plaintiffs to exceptions taken to such ruling by the court. The verdict was directed upon the grounds set forth in defendant's motion, which embodied a brief statement of the notices of defense given under the general issue which need not be considered, except the notice that defendant would claim by way of recoupment in its defense liquidated damages provided by the contract, from August 1, 1912, to February 7, 1913, amounting to $1,860.

The first proposition to be considered is whether the court erred in holding that plaintiffs could not recover because the terms of the contract were not followed in that they did not procure a certificate from the architects. It is undisputed that from the time plaintiffs entered upon the execution of this work no architects' certificates were asked for or required, but payments were made by defendant on the contract monthly during the continuance of the work upon informal statements made in writing by plaintiffs, certifying the amounts of material and labor which had actually been expended since the last payment, and as to these payments and the amounts thereof there is no dispute in the case.

There seems also to be no dispute but that the entire contract price of $22,756 has been paid to plaintiffs in this manner, except the balance of $1,205.30, for which suit is brought, and that no such

certificates were ever asked for by defendant until some time in April, or May, 1913, after the foregoing payments had been made and after the building had been completed for about two months, when the contractors asked one of the architects to furnish a final certificate. This architect, who, under the contract, acted as agent of defendant, testified that he refused to furnish such certificate although the building was completed, because there was a question of liquidated damages arising out of delay in completing the building, which had not been adjusted. The contract gave no authority to the architects to refuse a certificate for that reason. The only condition attached to issuing a certificate is the completion of the work. From all the evidence in the case upon this question it is clear that defendant waived the condition in the contract relative to certificates of the architects until the building was completed, and as to the final certificate plaintiffs were not at fault because it was not furnished upon request.

The undisputed evidence in the case upon the question of delay shows such delay was principally if not entirely attributable to the defendant and its architects. The contract was entered into November 22, 1911. The lot upon which the building was to be erected had in it a large excavation full of water which was to be drained by defendant and put into condition so that plaintiffs could enter upon it and proceed with the work of construction. This was not done until April 20, 1912. After the work had progressed for some time serious errors in the plans of the building which were made by architects of defendant were discovered, which necessitated tearing down considerable brick work and a delay of four weeks before the new steel arrived in Birmingham, which on account of alterations in the plans was required before the work could proceed. The record

also shows plaintiffs were further delayed in completing the work by reason of the neglect of defendant to notify them that it exercised the option provided in the contract for them to complete the second story of the building. It did not give this notice until July 24, 1912, one week before the time fixed in the contract for completing the building. There was no time limit fixed in the contract for the completion of the second story by plaintiffs after defendant had exercised its option not to do this work.

The record shows that it would have been impossible to complete the building within the time limit provided by the contract and that it was so recognized by all of the parties concerned. The president of defendant school board testified that no claim to that effect was made by defendant until after the building was completed, February 7, 1913. The exercise of this option made it necessary for plaintiffs to procure the material and perform the labor in completing the second story to the amount of $2,825, which it is estimated would require many weeks time, and it appears that it also delayed the completion of the work on the first story while the second story was being completed, and that the first story could not be occupied until all of the second story was finished. In our opinion the undisputed record shows that when defendant required plaintiffs to complete the second story it abandoned the time limit provided by the contract, and such abandonment operated to remove the consideration of liquidated damages provided under this contract.

The court also held plaintiffs could not recover because they had not conformed with the requirements of the contract in submitting matters of difference to arbitration. This contract contained certain provisions relative to arbitration which need not be stated at length. The first (article III) relates to

disputes arising from pay for extras and alterations in the building. It is sufficient to state that no such dispute has arisen.

The second (article VII) relates to extension of time for the completion of the work if asked for by plaintiffs in writing in case of delays caused by defendant, its architects, or by strikes of the employees of plaintiffs. No extension of time was ever asked for by plaintiffs.

There is another provision (article VIII) treating of arbitration which is of doubtful application to the instant case by reason of its incongruity with the contract as a whole. Apparently this contract was written upon a blank containing this provision, which was not obliterated. It reads:

"The owner agrees to provide all labor and materials not included in this contract in such manner as not to delay the material progress of the work, and in the event of failure so to do, thereby causing loss to the contractor, agrees that he will reimburse the contractor for such loss; and the contractor agrees that if he shall delay the material progress of the work so as to cause any damage for which the owner shall become liable (as stated above), then he shall make good to the owner any such damage. The amount of such loss or damage to either party hereto shall, in every case, be fixed and determined by the architects or by arbitration, as provided in article III of this contract."

This contract does not provide for the furnishing by either of the parties any material and labor not included in it. Everything either party was to furnish, either in material or labor, is specifically included in this contract. Neither party has ever claimed damages against the other under this article VIII, nor has either party ever asked for arbitration upon any subject. As already stated, the only question in dispute between the parties is whether or not the plaintiffs should pay defendant liquidated dam-

ages because the building was not completed on the date fixed in the contract. Under the circumstances of this case plaintiffs were not required to arbitrate.

Another provision in the contract considered in the determination of the case by the trial court relates to sworn statements of contractors and materialmen indicating that these were not filed. The bonds furnished by plaintiffs of $10,000 each were accepted as satisfactory by the defendant and were given under the requirements of the specifications which provided that only in case the bonds were not given was a contractor's affidavit required under section 5 of the mechanic's lien law, 3 Comp. Laws, § 10714 (5 How. Stat. [2d Ed.] § 13770).

It further appears without dispute that there are no claims or liens of subcontractors or materialmen against this building or involved in this suit, and that defendant is subject to no liability on account of any such claims or liens. As already stated, this suit is brought to recover a small balance due plaintiffs for performing this work, and as far as appears from this record the amount of this balance is not disputed. The record shows that the question of this affidavit of plaintiffs was not raised until after the completion of the building by them and a final settlement was demanded, when one was procured and presented by plaintiffs to the architect.

It was the contention of defendant, both upon the trial of the case and in its brief before this court, that the declaration of plaintiffs in this case was not sufficient in law to warrant a recovery for a balance due for work and labor done and materials furnished in completing this building, by reason of the fact that plaintiffs had not complied with these requirements of the contract above referred to. The court, in directing a verdict in favor of defendant, adopted this view.

The declaration is in assumpsit upon all the common counts and for money due plaintiffs from the defendant for the construction of the school building in question. It contained the allegation that the contract had been in all respects performed by them in a proper and workmanlike manner. A copy of the contract was attached to the declaration as an exhibit. To this declaration the defendant pleaded the general issue with certain notices of defense which have already been considered.

It is the contention of plaintiffs that the declaration was sufficient, that the waiver of defendant of the requirements of this contract, the reason for the nonperformance of which defendant claims should appear in the declaration, and the conduct of defendant by which it would be estopped from urging the performance of the conditions which defendant contends were not performed, were matters to be proved under these pleadings upon the trial of the case. We are of the opinion that this declaration was sufficient in law to support a recovery in this case.

Our conclusion is that the circuit court was in error in directing a verdict for defendant.

The judgment of the circuit court is reversed, and a new trial is ordered.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.